26470.00D6AW/ema/Doc ID - 680892                                     #412

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NATIVE AMERICAN ARTS, INC.,          )
                                     )
    Plaintiff,                       )
                                     )
    v.                               )   No. 04C 0277
                                     )   Judge Hibbler
JEWEL FOOD STORES, INC. a/k/a JEWEL-OSCO )   Magistrate Judge Denlow
and E. DAVIS INTERNATIONAL, INC.     )
                                     )
    Defendants.                      )

**FILED**

MAR 0 8 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE

**TO:**  Michael P. Mullen, Esq.
Mullen & Foster
166 West Washington Street, #600
Chicago, IL 60602

Roberta S. Bren, Kyoko Imai
Oblon, Spivak, McClelland, Maier &
Neustadt, P.C.
1940 Duke Street
Alexandria, VA 22314

John T. Gabrielides, Esq.
Brinks Hofer Gilson & Lione
455 North Cityfront Plaza Drive
Chicago, IL 60611-5599

PLEASE TAKE NOTICE that on the 9th day of March, 2005, there was filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **Defendant Car-Freshner Corporation, d/b/a E. Davis International's Reply In Support Of Its Motion to Strike Plaintiff's Second Amended Complaint**, a copy of which is attached hereto.

Jeffrey H. Lipe (6185734)
Beth B. Woods (6278739)
WILLIAMS MONTGOMERY & JOHN LTD.
Attorneys for Defendant Car-Freshner Corporation
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 443-3200

## Certificate of Service

I certify that I served this Notice by mailing and/or hand delivery a copy to each person to whom it is directed at the address above indicated by depositing it in the U. S. Mail at 20 North Wacker Drive, Chicago, Illinois, on March 8, 2005, with proper postage prepaid.

Jeffrey H. Lipe, Attorney at Law

26470.00D6AW/ema/Doc ID - 680491            #412

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NATIVE AMERICAN ARTS, INC. | ) |
| | ) |
| Plaintiff, | ) No. 04 C 0277 |
| | ) |
| JEWEL FOOD STORES, INC. a/k/a Jewel-Osco | ) |
| and E. Davis International, Inc. | ) |
| Defendants. | ) Judge Hibbler |
| | ) Magistrate Judge Denlow |

*FILED*

*MAR 0 8 2005*

*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

## DEFENDANT CAR-FRESHNER CORPORATION d/b/a E. DAVIS INTERNATIONAL'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES Defendant, CAR-FRESHNER CORPORATION d/b/a E. DAVIS INTERNATIONAL (hereinafter "CFC"), by and through its attorneys, Jeffrey H. Lipe and Beth B. Woods of WILLIAMS MONTGOMERY & JOHN LTD., and for its reply in support of its Motion to Strike Plaintiff's Second Amended Complaint states as follows:

1.     In its response to Car-Freshner's Motion to Strike, plaintiff alleges that the court did not limit NAA's amendment of its complaint to the removal of Enesco's claims. In support of this contention, Plaintiff simply attaches the minute order from the hearing. However, a review of the transcript from the Case Management Conference confirms that plaintiff petitioned the court to amend its complaint strictly as to the Enesco allegations, and nothing more. (A copy of the transcript from the January 19, 2005, Case Management Conference is attached hereto as Exhibit A).

2.     Specifically, plaintiff's oral motion to amend the complaint transpired, verbatim, as follows:

MR. MULLEN: Judge, one reason for the status was to report on the settlement efforts regarding, Enesco, the third-party defendant in this case. I am pleased to report that we did settle that case. And that settlement is being implemented. Part of the implementation would be an amendment of this case to eliminate the basis for any third-party complaint here by withdrawing allegations regarding certain allegations regarding certain products that came from Enesco. And I would request, Judge, 21 days to do that because we have to trace the products and amend the complaint.

THE COURT: Okay. Plaintiff's request for 21 days to amend the complaint will be allowed.

(See p.2 of Transcript)[1].

3.      Plaintiff alleges that the court, "did not limit NAA's amendment in any way, nor was it asked to by any party." Plaintiff's argument improperly attempts to shift the burden imposed by the Federal Rules of Civil Procedure regarding amendments of pleadings to the court and to defendants. Under Rule 15(a), plaintiff has the burden of petitioning the court for leave to amend its pleading. Upon plaintiff's specific request, the court and the parties then respond. It is not incumbent upon the court to give leave or for defendant to respond to a request which plaintiff does not make. Any such assertion by plaintiff that defendant failed to object to an amendment which plaintiff did not request of the court is absurd and should be rejected by the court.

4.      Plaintiff next argues that defendant's statute of limitations argument is confusing, misleading and inapplicable. Defendant never specifically represented to the court that both of the claims which plaintiff added were barred by the statute of limitations. Defendant simply asserted to the court that the added claims were potentially subject to numerous defenses, including the applicable statute of limitations.

---

[1] Any other reference at the Case Management Conference to plaintiff's proposed amendment to his complaint concerned the timing of the amendment and defendant's responsive pleading and was not substantive. (See pp. 5, 13 of Transcript).

5.     With respect to this claim and the applicable statute of limitations, plaintiff argues that the Federal 4-year catch-all statute applies.   However, plaintiff's assertion has been previously rejected by two separate Northern District Courts in the cases of *Native American Arts, Inc. v. Earthdweller, Ltd.*, No. 01 C 2370, 2002 WL 655683, at *1 (N.D.Ill.April 22, 2002) and *NAA v. Chrysalis Institute, Inc.*, No. 01 C 5714, 2002 WL 441476, at * 2 (N.D.Ill. Mar. 21, 2002).  Both of these courts held that the federal catch-all limitations period was inapplicable because the IACA was enacted before § 1658. *Id.* at *2.   The *Chrysalis* court determined, and the *Earthdweller* court, agreed that the most closely applicable statute of limitations is the three-year limitations period in the Illinois Consumer Fraud Act, 815 ILCS § 505/1 et seq. *Id.*

6.     Consequently, while a fully briefed argument regarding the applicable statute of limitations would be premature at this point, defendant brings these above-discussed decisions to the court's attention to demonstrate the viability of a potential defense to one of the two claims which plaintiff is improperly attempting to add and to refute plaintiff's argument on this point. Further, if the court allowed plaintiff to add the Target claim, defendant will most certainly bring a motion to dismiss which will further delay the current litigation.

7.     Plaintiff alleges that the addition of its two claims would not affect discovery. Such is not the case as discovery would necessarily involve additional interrogatories and requests to produce from all parties concerning each of the two new claims.  Factoring in drafting, service and response time, this supplemental discovery would add, at a minimum, two months to the discovery process.  In turn, the addition of the written discovery would delay the parties moving forward with oral discovery.

8.     Plaintiff also fails to factor into its position regarding discovery that the two additional claims involve two additional retail distributors who could be added as defendants in

3

the action. Such an addition at this stage of the litigation or at any time hereafter would greatly delay the litigation as the addition of the retail defendants would essentially re-start this case from the beginning.

9.     Plaintiff asserts that any delay in this litigation was caused by defendant's delay in agreeing to the Protective Order. While this contention is completely irrelevant to the court's determination of the issue of plaintiff's improper amendment, it bears mentioning that the delay in the Protective Order was the result of the parties inability to agree to the terms of the order. Except for a few very minor changes, the court accepted defendant's Protective Order as drafted, and rejected plaintiff's objections and suggestions regarding the language of the order. If there was any delay, it was due to plaintiff's unreasonable and later-rejected position on the Protective Order.

10.     The parties have already responded to discovery. Given the court's recent entry of the Protective Order, it is anticipated that documents will be produced by both parties shortly and oral discovery will begin. According to the current schedule entered by the court, plaintiff was required to disclose its experts by February 14, 2005 and the parties are to complete discovery by June 30, 2005. (A copy of the court's Scheduling Order is attached hereto as Exhibit B). It will be impossible to meet these deadlines with the introduction of the two new claims, the resulting motion to dismiss, the completion of discovery on the claims and the possibility of plaintiff naming two new defendants in the case.

11.     Plaintiff has known about the two additional claims for several years. If plaintiff wanted to add these claims to the current lawsuit, it should have done so by August 9, 2004, the date by which the court ordered the parties to make any amendments to its pleadings. (See Scheduling Order). Indeed, plaintiff already amended its complaint in May, 2004, to add a count

4

for products allegedly sold at Clark Gas Stations. Plaintiff should have added the allegations as to Target and Cubs Foods at that time or any other time before August 9, 2004, if it intended to include those claims in this lawsuit. Plaintiff has not given the court any reason for why it delayed in bringing these new claims or explained to the court why it ignored the court's Scheduling Order. As such, the court should not permit plaintiff to keep expanding the universe of his claims in this lawsuit, at will, and without reason or permission of the court.

12. Plaintiff is free to file a separate cause of action as to these two additional claims and the resulting litigation would not affect the current suit and its progression forward. One of the reasons that the court refused to consolidate the *Enesco* case with the current one several months ago was to avoid any delay in the current litigation. Likewise, the court should reject plaintiff's effort to introduce these new claims as part of the current litigation and further delay advancement of the case.

13. Finally, plaintiff claims that defendant "is making a big deal out of nothing and ignoring the practicalities involved." Plaintiff also states that one of defendant's seeming goals is to increase plaintiff's costs of litigation. Plaintiff's contention is both insulting and groundless. Defendant does not need to attempt to increase plaintiff's litigation costs as plaintiff is doing a fine job on its own. All plaintiff needs to do to reduce its cost of litigation is to follow the court's Scheduling Order and the Federal Rules of Civil Procedure. The court's Scheduling Order and the Federal Rules of Civil Procedure are not discretionary and are in place for a reason: the efficient and effective resolution of claims. The only "waste of Court resources" and violation of "the spirit of the Federal rules" is by plaintiff who has blatantly ignored the court's Scheduling Order, the court's permitted amendment of its complaint and the Federal Rules of Civil Procedure.

14. For the above stated reasons and those articulated in Plaintiff's Motion to Strike, the court should not allow Plaintiff's amendments to include the claims involving products sold at Target and Cub Foods.

WHEREFORE, Defendant, CAR-FRESHNER CORPORATION d/b/a E. DAVIS INTERNATIONAL respectfully requests that this Honorable Court enter an order striking Plaintiff's Second Amended Complaint and for any other relief the Court deems reasonable and appropriate under the circumstances.

CAR-FRESHNER CORPORATION, d/b/a
E. DAVIS INTERNATIONAL

By: Jeffrey H. Lipe

Jeffrey H. Lipe
Beth B. Woods
Williams Montgomery & John Ltd.
Counsel for Car Freshner Corporation, d/b/a
E. Davis International
20 North Wacker Drive, Suite 2100
Chicago, IL 60606
(312) 443-3200
Firm No. 412

6

1

1
2          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

3   NATIVE AMERICAN ARTS, INC.,        )   Docket No. 04 C 277
                                       )
4                      Plaintiff,      )
                                       )
5            v.                        )   Chicago, Illinois
                                       )   January 19, 2005
6   JEWEL FOOD STORES, INC.,           )   9:30 o'clock a.m.
    aka Jewel-Osco, et al.,            )
7                                      )
                       Defendants.     )
8
           TRANSCRIPT OF PROCEEDINGS - STATUS
9        BEFORE THE HONORABLE WILLIAM J. HIBBLER

10  APPEARANCES:

11  For the Plaintiff:        MULLEN & FOSTER, by
                              MR. MICHAEL PATRICK MULLEN
12                            166 West Washington Avenue
                              Suite 600
13                            Chicago, Illinois 60602

14  For the Defendants:       WILLIAMS, MONTGOMERY & JOHN, by
                              MS. BETH BOSIES WOODS
15                            20 North Wacker Drive
                              Suite 2100
16                            Chicago, Illinois 60606

17                            BRINKS, HOFER, GILSON & LIONE, by
                              MR. SCOTT JASON SLAVICK
18                            455 North Cityfront Plaza Drive
                              Suite 3600
19                            Chicago, Illinois 60611

20

21

22              ALEXANDRA ROTH, CSR, RPR
                  Official Court Reporter
23              219 South Dearborn Street
                      Room 1744-A
24              Chicago, Illinois 60604
                   (312) 294-0134
25

EXHIBIT
A

1    (Proceedings had in open court:)

2        THE CLERK:  04 C 277, Native American Arts versus

3    Jewel Food et al. for status.

4        MR. MULLEN:  Good morning, your Honor.  Michael

5    Patrick Mullen on behalf of plaintiff, Native American Arts.

6        THE COURT:  Good morning.

7        MS. WOODS:  Good morning, your Honor.  Beth Woods on

8    behalf of E. Davis International d/b/a Car Freshner.

9        MR. SLAVICK:  Good morning, your Honor.  Scott Slavick

10   on behalf of Jewel Foods.

11       THE COURT:  Good morning.

12       MR. MULLEN:  Judge, one reason for the status was to

13   report on the settlement efforts regarding, Enesco, the

14   third-party defendant in this case.  I am pleased to report

15   that we did settle that case.  And that settlement is being

16   implemented.  Part of that implementation would be on amendment

17   of this case to eliminate the basis for any third-party

18   complaint here by withdrawing allegations regarding certain

19   products that came from Enesco.  And I would request, Judge, 21

20   days to do that because we have to trace the products and amend

21   the complaint.

22       THE COURT:  Okay.  Plaintiff's request for 21 days to

23   amend the complaint will be allowed.

24       MR. MULLEN:  Judge, the other thing was, I had

25   indicated to the Court that based upon the fact that we were

1  able to settle the case with Enesco, that I would be suggesting
2  to the other defendants, both Jewel and Davis, the possibility
3  of mediation conference either before yourself or Judge --
4  Magistrate Judge Denlow, who has this case.  My motivation is
5  that with -- we didn't think we were going to be able to settle
6  the Enesco thing, but mediation did prove successful.  And I
7  think that this case, which is a limited number of products,
8  ought to be susceptible to settlement, given a good faith on
9  the part of all the parties.

10         Plaintiff is in such a position to approach that in
11  good faith.  I had suggested that to Ms. Robin Bren, who is I
12  guess the main lawyer in Virginia on behalf of Davis.  I had
13  suggested that to her.  We had some preliminary conversations,
14  including some concerns she had.  I thought we had allayed her
15  concerns.  But I have not heard back from her at what her
16  position was, even though she knows about today's status.  And
17  I had asked that we hear from her before that status.

18         MS. WOODS:  I have spoken with --

19         MR. MULLEN:  Yesterday, Judge, Ms. Woods, when we were
20  discussing another problem, had indicated that she -- well, I
21  will let Ms. Woods speak for herself, obviously.  But I had
22  heard that she may not be interested.

23         I also talked to Jewel, and Jewel is represented
24  primarily by California counsel.  And I spoke to California
25  counsel about the possibility of a settlement conference.  And

4

1   they are taking a it's up to Davis really.  I guess they got a
2   full indemnity arrangement between Jewel and Davis.  So that's
3   the status.

4        My thought is, Judge, even if there is a reluctance on
5   the part of the parties to have a mediation, that it might well
6   be worth the Court's effort to consider one anyways.  My
7   experience has been, and it's born out by the Enesco situation,
8   when you got people actually at the table and start discussing
9   the practicalities involved as well as the legal issues and the
10  factual development that's necessary, that sometimes we are
11  well able to settle the case.  And that would be a suggestion
12  that I would make.

13       MS. WOODS:  All I can tell your Honor is that, based
14  on a conversation that Mr. Mullen had with Ms. Bren, who is
15  trademark counsel for E. Davis International, based on the
16  preliminary terms and potential conditions that they discussed,
17  the client was not interested.  So certainly I will do whatever
18  obviously the Court feels is appropriate.  But at this stage of
19  the game anyway, based on a conversation that she had with Mr.
20  Mullen, there is an interest on Car Freshner's part in
21  participating in a mediation.  I think it would be fruitless.

22       So again, I will defer to the Court on that.

23       MR. MULLEN:  She is referring to a conversation that I
24  had with Ms. Bren.  And Ms. Bren at that point in time was open
25  to the suggestion of a mediation or some approach at

5

1    settlement.  We never talked dollars.  We never talked

2    specifics.  She had a concern about a broader issue, that it

3    would have to do with a way of approaching settlement.  And I

4    had presented that to her.  And that's what she was going to

5    discuss with her client and get back to us.

6            But we had no real settlement exchange or anything

7    like that.  I just put that out there to clarify for the Court.

8            THE COURT:  Okay.  Here is what I suggest.  We are

9    going to get your amended complaint.  I would suggest that the

10   parties talk further and determine whether or not there is a

11   basis to have a settlement conference, because if one comes

12   with mind closed it really serves no useful purpose.  If both

13   sides are at least of a mind to want to talk about resolution,

14   then the Court is willing to participate in that exercise as

15   soon as possible.

16           Twenty-one days, what's the date for --

17           THE CLERK:  February 9.

18           THE COURT:  -- your amended complaint.

19           MS. WOODS:  Your Honor, if I may?

20           THE COURT:  Yes, ma'am.

21           MS. WOODS:  There is an outstanding issue.  As you

22   know, we were before the Court for some time discussing the

23   protective order.  And we are 90 percent there but need the

24   Court's help with the last 10 percent.  We are prepared to

25   discuss that today, or we are prepared to come back depending

1    on what the Court would like to do.

2         THE COURT:  I don't want you to come back needlessly,

3    so why don't we discuss it today.

4         MS. WOODS:  Okay.  Your Honor, there was -- just as a

5    refresher, and again we are down to one last point of dispute

6    amongst the parties, or at least amongst the plaintiff and the

7    defendants.  And that's that there was discussion about turning

8    over the certificate signed by the consultant or the expert to

9    Mr. Mullen so that he would have time to object as he has had

10   problems in the past, as he indicated to the Court, with

11   experts and so forth.  Before then we could turn over

12   confidential documents to the expert.

13        We crafted language, to which both parties agree,

14   which sets the procedure in place whereby before any documents

15   were turned over to an expert or consultant, there was a whole

16   procedure put in place for him to object, come to Court, et

17   cetera, et cetera.  Again that language is not in dispute.

18        When I presented the language to Mr. Mullen, he said

19   that he wanted that particular language, this whole procedure

20   of ten days and petitioning the Court and objecting and so

21   forth, to apply to every single person, including the attorneys

22   and the paralegals and in-house counsel, parties that are

23   representatives of the parties that are already bound by the

24   agreement, that he wanted that language and that procedure to

25   apply to them as well.

1    And my point is that was never contemplated.  What was

2  contemplated was and what the issue concerned was the experts

3  and the consultants and giving him the opportunity to object

4  before any information was turned over to them.  Now he wants

5  this quite frankly little bit complicated procedure to apply to

6  attorneys and paralegals and essentially the defense team.  We

7  have got two defendants.  We've got two sets of in-house

8  counsel.  And essentially it would be cumbersome and totally

9  slow down the litigation process, which I don't believe was

10  contemplated by certainly me or the Court when we had the

11  discussion about turning over the certificate and so forth.

12    So that's where we are, your Honor.

13    MR. MULLEN:  Judge --

14    THE COURT:  Yes.

15    MR. MULLEN:  It was contemplating.  In fact, it was

16  agreed upon.  And if you look at counsel's proposed protective

17  order, you will see in the back an acknowledgment by -- it's

18  Exhibit A by people who receive access to the confidential

19  information.  It's not restricted to the experts, Judge.  We

20  had -- and I would ask the Court to refresh his recollection,

21  that when we began our discussion the last time with the

22  protective order, counsel came in and said that she was

23  agreeable to meeting our request for accountability and an

24  acknowledgment by anybody who had access to this information.

25  And that she agreed to.  She stated that.  And then we went

1   through a process of a hearing with that premise in mind.

2   So everything that we did before was premised upon

3   whoever gets access to this document, this information, signs

4   the acknowledgment and are bound by the Court order.  That was

5   the whole point of much of the discussion.  And instead of

6   having it apply to everybody who has access to the information,

7   or they acknowledge that they have it and they are bound by

8   this court order, she proposes to have an acknowledgment only

9   by experts.  And we think that's inadequate, Judge.  It's

10  inadequate because there are so many people who are going to

11  have access to this information.  And if a problem arises, we

12  need to have a paper trail.  We need to have -- I need to know

13  who actually had access to the information.  That's the problem

14  that we walked into court with, expressed to the Court

15  previously, and that problem is still out there.

16  So I don't think it's onerous.  The same burden falls

17  on us.  We have to acknowledge who gets access to their

18  confidential information.  But the fact that there is a number

19  of people who have access to this information is even more

20  reason why we need to have the acknowledgment by the people

21  that they are indeed bound by that court order.  That's -- that

22  was the heart of the thing.  And I was very frankly very

23  surprised when counsel tried to limit it to only experts.

24  Anybody who has access to this information should acknowledge

25  that they are indeed bound by the protective order because

1  that's the point of the protective order.

2  THE COURT: Well, let me suggest this: I don't know

3  that every person within the firm who is going to have access,

4  the lawyers and their assistants or their law clerks -- the

5  fact that they, maybe the lawyer themselves, would indicate

6  that the firm and those people within the firm will have

7  access. But I don't think that they need to be designated.

8  MR. MULLEN: That's fine. That will be fine, Judge.

9  We would agree that a key person, a partner in the law firm,

10  sign the acknowledgment, and we get a copy of it. That would

11  be fine with us, Judge.

12  THE COURT: Counsel, do you have a problem with that?

13  Because certainly most protective orders relate to the conduct

14  of the lawyers in the items that they receive. So merely

15  indicating that not just you personally but other members of

16  your staff will have access to the information, I see no

17  problem with that.

18  MS. WOODS: Your Honor, the attorneys -- by the

19  express terms of the order, the attorneys and the -- and their

20  support staff and their employees are already bound by the

21  order. So we are just putting one more procedure in place,

22  which is completely unnecessary and which --

23  MR. MULLEN: Judge, without the acknowledgment, we

24  don't know who's bound by this order, and that's the reason for

25  it.

1       THE COURT:  Counsel, clearly the lawyers who are going
2   to be recipients of the information are bound by the order.
3   That's why the order is in place.

4       MR. MULLEN:  And all we want is the acknowledgment, as
5   your Honor indicated.  That's not a big burden.

6       THE COURT:  It's sort of a redundancy, as far as I am
7   concerned, to say that the lawyers and their staff are going to
8   be obligated when the whole idea of the protective order is
9   before you turn over that information to the lawyers or to the
10  firm you want to be assured that it is going to be protected.

11      MR. MULLEN:  Correct.  And this -- Judge, this is
12  their acknowledgment.  They already got the acknowledgment in
13  there.  This has always been contemplated, that we are going to
14  get an acknowledgment.  The only question is, does it have to
15  be more than, let's say, the senior partner in the case?  We
16  say, no, that would be fine, Judge.

17      But we would want a written acknowledgment by that
18  person that indeed they are subject to and that their employees
19  and everybody else that gets access to this are subject to the
20  terms of that protective order and that they have told the
21  employees.  That's in the acknowledgment, Judge.  That's where
22  that obligation comes from.  It's no place else in the
23  agreement.

24      MS. WOODS:  It's absolutely in the protective order --
25      MR. MULLEN:  That's why --

1     MS. WOODS:  -- obligation --

2     THE COURT:  One at a time.

3     MR. MULLEN:  That's why, Judge, it's necessary.  And I

4  don't think it's burdensome or onerous to have a partner in the

5  firm who's taking responsibility for the case, who's getting

6  the information, to acknowledge it on the exhibit form as it

7  was always contemplated.

8     THE COURT:  Counsel, will you indicate where you

9  believe it's already in the agreement?

10     MS. WOODS:  Certainly, your Honor.

11     Counsel for each party who obtains a document or

12  information designated confidential under the court order shall

13  not disclose or permit disclosure of any such information or

14  document or its contents, et cetera, to any other person or

15  entity except in the following circumstances.  And then it lays

16  out, and one of the categories is employees of counsel, and has

17  a conversation about that.

18     Your Honor, we are officers of the Court.  We are

19  bound by this order.  This conversation is quite frankly --

20     MR. MULLEN:  Judge, could I tender to you the exhibit

21  that we are talking about?

22     THE COURT:  Sure.

23     MR. MULLEN:  Acknowledgment, please.

24     THE COURT:  Is the acknowledgment that you suggest be

25  added included here?

1    MR. MULLEN: That's what we want signed by the partner

2  of the firm, Judge.

3    (Brief pause.)

4    THE COURT: It seems to me that the only difference

5  between this and what is already involved in the protective

6  order is the requirement of instruction to other employees

7  regarding the terms of the protective order.

8    MS. WOODS: Your Honor --

9    THE COURT: As far as I am concerned, that requirement

10  need not be spelled out because it's implicit in the protective

11  order, that to anyone to whom they give the information

12  received as a result of the protective order they are certainly

13  required to notify those persons as to a limited extent as to

14  which that information may be utilized.

15    MR. MULLEN: But that's not reflected anyplace else in

16  this protective order other than the acknowledgment that your

17  Honor has before you. That's why we are saying we need to have

18  that acknowledgment filled out, given back to us. And then we

19  go on with it.

20    THE COURT: I don't think that's necessary. That is

21  implicit already in the protective order. You can put a

22  thousand things in there that are implicit that you want to be

23  specified. But because of the nature of the protective order,

24  that is unnecessary.

25    MS. WOODS: Your Honor, based on what your Honor is

1  saying, we will have the finalized protective order to the

2  Court within the next couple of days, if it pleases the Court,

3  for entry.

4        THE COURT:  Okay.

5        MR. MULLEN:  We just wanted to see that before it goes

6  to the Court obviously.

7        THE COURT:  Sure, absolutely.  It will go to counsel

8  before it comes to the Court.

9        MS. WOODS:  Thank you.

10       THE COURT:  Why don't we set this about 30 days out.

11 That will give us time to have the amended complaint filed.

12 I'm sorry.  And how much time do you want to respond to the

13 amended complaint?

14       MS. WOODS:  Twenty-one, your Honor.

15       THE CLERK:  Twenty-one days from February 9 will be

16 March 2.

17       THE COURT:  Let's have a status shortly thereafter.

18 So by that time you folks can get back to your respective

19 clients and find out if there is any possibility of a

20 settlement conference.

21       THE CLERK:  Monday, March 14, at 9:30.

22       MS. WOODS:  Thank you, your Honor.

23       THE COURT:  Thank you.

24       MR. MULLEN:  One second, Judge, please?

25       THE COURT:  I'm sorry?

14

1          MR. MULLEN:  Did you say the 14th?

2          THE CLERK:  Monday, the 14th.

3          MR. MULLEN:  That's fine, Judge.  Thank you, your

4  Honor.

5          THE COURT:  Thank you.

6     (Which were all the proceedings had at the hearing of the

7      within cause on the day and date hereof.)

8                     CERTIFICATE

9         I HEREBY CERTIFY that the foregoing is a true, correct

10  and complete transcript of the proceedings had at the hearing

11  of the aforementioned cause on the day and date hereof.

12

13  _____        2-17-05

     Official Court Reporter           Date

14  U.S. District Court

     Northern District of Illinois

15  Eastern Division

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Michael W. Dobbins
  CLERK

Office of the Clerk

Jeffrey H. Lipe
Williams, Montgomery & John, Ltd.
20 North Wacker Drive
Suite 2100
Chicago, IL  60606

--------------------------------------------------------------------------------

Case Number:  1:04-cv-00277

Title:  Native Amer Arts Inc v. Jewel Food Stores

Assigned Judge: Honorable William J. Hibbler

MINUTE ORDER of 5/19/04 by Hon. William J. Hibbler :
Status hearing held and continued to 8/18/04 at 9:30 a.m.
Disclosure of plaintiff's expert(s) pursuant to FRCP
26(a)(2) by 2/14/05. Deposition of plaintiff' expert(s) to
be completed by 4/4/05. Disclosure of defendants' expert(s)
pursuant to FRCP 26(a)(2) by 5/6/05. Deposition of
defendants expert(s) to be completed by 6/17/05. Disclosure
of rebuttal expert(s) pursuant to FRCP 26(a)(2) by 6/27/05.
All discovery to close 6/30/05. Filing of dispositive
motions with supporting memoranda by 8/1/05. Joint pretrial
order to be submitted in triplicate to chambers on 12/2/05
. Final pretrial conference set for 12/12/05 at 11:00 a.m.
Trial set for 1/9/06 at 10:00 a.m. Parties are given leave
to serve 25 interrogatories. Defendants given leave to
appear pro hac vice upon payment of the filing fee. Mailed
notice

This docket entry was made by the Clerk on May 20, 2004

ATTENTION:  This notice is being sent pursuant to Rule 77(d) of the
            Federal Rules of Civil Procedure or Rule 49(c) of the Federal
            Rules of Criminal Procedure.  It was generated by ICMS,
            the automated docketing system used to maintain the civil and
            criminal dockets of this District.  If a minute order or
            other document is enclosed, please refer to it for
            additional information.

For scheduled events, motion practices, recent opinions and other information,


EXHIBIT
B